[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-13039

_____

CORPORACIÓN AIC, SA,

Plaintiff-Appellant,

*versus*

HIDROELÉCTRICA SANTA RITA S.A.,
a Guatemalan company,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-20294-RNS

_____

Before WILLIAM PRYOR, Chief Judge, and WILSON, JORDAN, ROSENBAUM, JILL PRYOR, NEWSOM, BRANCH, GRANT, LUCK, LAGOA, BRASHER, and TJOFLAT, Circuit Judges.[1]

JORDAN, Circuit Judge:

The United States is a signatory to the New York Convention, a treaty which regulates international arbitration awards. *See* Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 4739. Congress has implemented the Convention through Chapter 2 of the Federal Arbitration Act. *See* 9 U.S.C. §§ 201 *et seq.*

Our task is to decide what grounds can be asserted to vacate an arbitral award governed by the New York Convention. We hold that in a case under the Convention where the United States is the primary jurisdiction—the jurisdiction where the arbitration was seated or whose law governed the conduct of the arbitration—the grounds for vacatur of an arbitral award are set out in domestic law, currently Chapter 1 of the FAA. And we overrule *Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1445–46 (11th Cir. 1998), and *Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte International GmbH*, 921

---

[1] Judge Tjoflat was a member of the en banc Court, having elected to participate in this decision pursuant to 28 U.S.C. § 46(c)(1).

F.3d 1291, 1301–02 (11th Cir. 2019), to the extent that they are inconsistent with our ruling.

## I

This case arose from a dispute between two Guatemalan companies, Corporación AIC, S.A., and Hidroeléctrica Santa Rita, S.A. Pursuant to a contract signed in March of 2012, Corporación AIC agreed to build a new hydroelectric power plant for Hidroeléctrica in Guatemala. In October of 2013, Hidroeléctrica issued a force majeure notice that forced Corporación AIC to stop work on the project. Hidroeléctrica eventually filed an arbitration proceeding in the International Court of Arbitration to recover advance payments it had made to Corporación AIC, and the latter counterclaimed for damages, costs, and other expenses. *See Corporación AIC, S.A. v. Hidroeléctrica Santa Rita, S.A.*, 34 F.4th 1290, 1292–93 (11th Cir. 2022).

The arbitration was held in Miami, Florida, and a divided arbitral panel ordered Corporación AIC to return about $7 million and €435,000 in advance payments but allowed it to keep what it had earned on the contract, about $2.5 million and €700,000. *See id.* at 1292–93. Everyone agrees that the arbitral award was a non-domestic award governed by the New York Convention because it was issued in the United States in a dispute between two foreign companies. *See id.* at 1293–94; 9 U.S.C. § 202.

Dissatisfied with the arbitral decision, Corporación AIC filed suit in federal court seeking to vacate the award. It asserted that

the arbitral panel had exceeded its powers, a ground set out in 9 U.S.C. § 10(a)(4), a provision of Chapter 1 of the FAA. *See* 34 F.4th at 1293. The district court ruled that such a challenge was unavailable because under Eleventh Circuit precedent, namely *Industrial Risk* and *Inversiones*, the grounds for vacatur of an arbitral award governed by the New York Convention are limited to those set out in Article V of the Convention. The district court therefore did not analyze whether the arbitral panel had exceeded its powers. *See id.*

A panel of this court affirmed. The panel concluded that it was bound by *Industrial Risk* and *Inversiones* but opined that those cases were wrongly decided and should be overruled by the full court. *See* 34 F.4th at 1292, 1301; *id.* at 1302 (Jordan, J., concurring). We vacated the panel opinion and ordered rehearing en banc. *See* 50 F.4th 97 (11th Cir. 2022).

## II

*Industrial Risk*, decided in 1998, held that when a party seeks vacatur of an arbitral award issued under the New York Convention a district court can only consider the grounds set out in Article V of the Convention. *See* 141 F.3d at 1446. After setting out the purpose of the New York Convention—encouraging the recognition and enforcement of international arbitral awards—we stated in *Industrial Risk* that an arbitral award that falls within the Convention "must be confirmed unless [the challenger] can successfully assert one of the seven defenses against enforcement enumerated in Article V of the . . . Convention." *Id.* at 1441. In so doing we cited to a former Fifth Circuit case and a district court case from

Delaware, both of which involved a proceeding to enforce (but not a proceeding to vacate) an arbitral award under the Convention. *See id.* at 1442 (citing *Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 335–36 (5th Cir. 1976), and *Nat'l Oil Corp. v. Lybian Sun Oil Co.*, 733 F. Supp. 800, 813 (D. Del. 1990)). We noted that the Convention's "enumeration of defenses" to recognition and enforcement of an award "is exclusive" under § 207 of the FAA, but then read those defenses as also constituting the only grounds for vacatur of an award. *See* 141 F.3d at 1446. In other words, we equated the defenses to recognition and enforcement with the grounds for vacatur. *See id.* at 1445-46.

Over 20 years later, *Inversiones* adhered to *Industrial Risk* because it constituted binding Eleventh Circuit precedent. *See Inversiones*, 921 F.3d at 1301–02. Although we had previously noted some tension between *Industrial Risk* and *BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 44–45 (2014), in *Bamberger Rosenheim, Ltd., (Israel) v. OA Development, Inc., (United States)*, 862 F.3d 1284, 1287 n.2 (11th Cir. 2017), we concluded in *Inversiones* that *BG Group* did not abrogate *Industrial Risk*. *See* 921 F.3d at 1302.

We now consider whether the grounds for vacatur of a New York Convention arbitral award are set out in Article V of the Convention or in § 10 of the FAA.

### III

Our task is to interpret the New York Convention and the FAA. As a result, our review is plenary. *See Underwriters at Lloyd's Subscribing to Cover Note B0753PC1308275000 v. Expeditors Korea, Ltd.*, 882 F.3d 1033, 1039 (11th Cir. 2018) (treaty interpretation); *United States v. Garcon*, 54 F.4th 1274, 1277 (11th Cir. 2022) (en banc) (statutory interpretation). We begin with some background concepts concerning international arbitration, and then turn to the language of the Convention and the FAA.

### A

Arbitration awards, including international ones, "are not self-enforcing and are only given legal effect through court orders and judgments enforcing them." 3 Martin Domke, Domke on Commercial Arbitration § 42:1 (3d ed. 2022). In the usual international arbitration case, the prevailing party goes to court seeking a judgment which recognizes and enforces (i.e., confirms) the award. The losing party, in turn, opposes recognition and enforcement, and sometimes—as here—moves to vacate the award. *See CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 72 (2d Cir. 2017); Stephen Balthasar, International Commercial Arbitration 794 (2d ed. 2021). For example, Chapter 2 of the FAA provides that "any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration." 9 U.S.C. § 207.

20-13039                Opinion of the Court                7

Confirmation under the FAA is essentially the same as recognition and enforcement under the New York Convention. Indeed, § 207 of the FAA uses confirmation interchangeably with recognition and enforcement: "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." As the Second Circuit has put it: "Read in context with the New York Convention, it is evident that the term 'confirm' as used in [§] 207 [of the FAA] is the equivalent of 'recognition and enforcement' as used in the New York Convention for the purposes of foreign arbitral awards." *CBF*, 850 F.3d at 72. *See also LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 875 (D.C. Cir. 2021) (stating that, under § 207 of the FAA, "[c]onfirmation is the process by which an arbitration award is converted to a legal judgment").[2]

Set aside, suspend, and annul under the New York Convention are, in turn, generally interchangeable with vacatur under the FAA. They all refer to the invalidation of an arbitral award. *See*

---

[2]Strictly speaking, recognition and enforcement are distinct legal concepts. Recognition adjudicates the validity (i.e., the binding nature) of an arbitral award, while enforcement reduces such an award to a judgment. *See Compañía de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 58 F.4th 429, 454 (10th Cir. 2023); Rogelio Vidal, *Influence of the Arbitral Seat in the Outcome of an International Commercial Arbitration*, 50 Int'l Lawyer 329, 335 (2017). But to be enforced an award must be recognized. *See CBF*, 850 F.3d at 72; Nigel Blackaby, Redfern and Hunter on International Arbitration 611 (6th ed. 2015). So in practice enforcement is functionally the same as recognition and enforcement.

Restatement of the Law, U.S. Law of Int'l Com. Arbitration and Investor-State Arbitration § 1.1 cmt. uu (ALI Proposed Final Draft 2019) ("Restatement of International Arbitration") ("Vacatur is largely synonymous with 'annul' and 'set aside' as those terms are understood in the New York and Panama Conventions.").[3]

Recognition and enforcement "serve different purposes [and] request different relief" than vacatur. *See McLaurin v. Terminix Int'l Co., LP*, 13 F.4th 1232, 1238 (11th Cir. 2021) (addressing the FAA). Recognition and enforcement seek to give effect to an arbitral award, while vacatur challenges the validity of the award and seeks to have it declared null and void. *See CBF*, 850 F.3d at 72; Blackaby, International Arbitration, at 570.

With respect to judicial remedies, the New York Convention allocates different responsibilities to different jurisdictions. The country which is the legal seat of the arbitration (or whose law governs the conduct of the arbitration) is referred to as the primary jurisdiction and its law (the *lex arbitri*) generally controls the procedural side of the proceeding. All other countries which are signatories to the Convention are considered secondary jurisdictions. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 (5th Cir. 2003); *CBF*, 850 F.3d

---

[3]The Proposed Final Draft of the Restatement of International Arbitration was approved by the Council and membership of the American Law Institute in 2019, and represents the official position of the Institute until the Restatement is officially published.

at 71; Alan Scott Rau, *Understanding (and Misunderstanding) "Primary Jurisdiction,"* 21 Am. Rev. of Int'l Arb. 47, 49 (2010).[4]

Under the New York Convention, only courts in the primary jurisdiction can vacate an arbitral award. *See, e.g., BG Group*, 572 U.S. at 37 ("[T]he national courts and the law of the legal situs of arbitration control a losing party's attempt to set aside [an] award.") (internal quotation marks omitted); *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007) ("Only a court in a country with primary jurisdiction over an arbitral award may annul that award.") (citation omitted); *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 87 F.3d 844, 849 (6th Cir. 1996) ("[A] motion to vacate [under the New York Convention] may be heard only in the courts of the country where the arbitration occurred or in the courts of any country whose procedural law was specifically invoked in the contract calling for arbitration[.]") (emphasis deleted); Restatement of International Arbitration, at § 1.3(a) ("The choice of an arbitral seat ordinarily determines . . . the courts that have the exclusive authority to set aside the arbitral award."). An award that is vacated is generally a nullity in the primary

---

[4] The *lex arbitri* should not be confused with whatever substantive law (the *lex causae*) governs the parties' commercial relationship. Parties may select a seat of arbitration in one country but choose to apply the law of a different country to their dispute. *See generally Lindo v. NCL (Bahamas), LTD.*, 652 F.3d 1257, 1275 (11th Cir. 2011); Loukas Mistelis, *Reality Test: Current State of Affairs in Theory and Practice Relating to "Lex Arbitri,"* 17 Am. Rev. of Int'l Arb. 155, 158-61 (2006).

jurisdiction. *See* Restatement of International Arbitration, at §§ 1.1 cmt. pp & 4.1 cmt. d.; Blackaby, International Arbitration, at 618. Vacatur also has legal consequences internationally, as it is a ground on which recognition and enforcement of the vacated award may be refused by a court in a secondary jurisdiction. *See* New York Convention, Art. V(1)(e); *Zeiler v. Deitsch*, 500 F.3d 157, 165 n.6 (2d Cir. 2007).

Courts in secondary jurisdictions can only decide whether to recognize and enforce an arbitral award. *See* New York Convention, Art. III ("Each Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles."). *See also Karaha*, 335 F.3d at 369 (explaining that "a court of secondary jurisdiction[,] under the New York Convention, [is] charged only with enforcing or refusing to enforce a foreign arbitral award"). The legal effect of the recognition and enforcement (or the denial of recognition and enforcement) of an award is limited to the secondary jurisdiction that rules on the request. *See* Blackaby, International Arbitration, at 615 ("The immediate consequence of a refusal to enforce an award is that the winning party fails to get what it wants—namely seizure of the loser's assets in the place in which enforcement is sought . . . [I]t should be borne in mind that [the winning party] may still have an award that can be enforced in

another state in which the losing party has assets.") (emphasis deleted). [5]

## B

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1645 (2020) (internal quotation marks omitted). We turn, therefore, to the relevant language of the New York Convention and the FAA.

### 1

Article III of the Convention calls upon signatory countries to "recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon," under the conditions laid down in other Articles. Article IV then lists the conditions that must be fulfilled for recognition and enforcement: "To obtain the recognition and enforcement mentioned in [Article III], the party applying for recognition and enforcement shall, at the time of the application, supply

---

[5] Sometimes the same country can act as both the primary and secondary jurisdiction. This occurs when the prevailing party seeks recognition and enforcement of the arbitral award in the primary jurisdiction and the losing party seeks to vacate the award in the same jurisdiction. In such a case the court considering the parties' dueling requests performs a "double role," exercising secondary jurisdiction with respect to the request for recognition and enforcement and primary jurisdiction with respect to the request for vacatur. *See Zeiler*, 500 F.3d at 165 n.6.

(a) [t]he duly authenticated original award . . . ; [and] (b) [t]he original agreement . . . ."

Article V sets out a limited number of grounds on which a court can refuse to recognize and enforce an arbitral award. It does so through two subsections.

First, Article V(1) provides that recognition and enforcement of an arbitral award "may be refused" on five grounds: (a) the parties to the arbitral agreement were "under some incapacity" or the agreement is "not valid under the law to which the parties have subjected it . . . or under the law of the country where the award was made;" (b) the "party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case;" (c) the "award deals with a difference not contemplated by or not falling within the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . ;" (d) the "composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place;" or (e) the "award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."

Second, Article V(2) provides that recognition and enforcement "may also be refused" on two additional grounds: (a) the "subject matter of the difference is not capable of settlement by

arbitration under the law of t[he] country" where, or under the law of which, the award was made; or (b) the "recognition and enforcement of the award would be contrary to the public policy of that country."

The only reference to vacatur (i.e., "set aside or suspended") in Article V is found in subsection (1)(e). Article V(1)(e) allows a court exercising secondary jurisdiction to deny a request to recognize and enforce a New York Convention award on the ground that it has been vacated by a court ("a competent authority") in the primary jurisdiction ("in which, or under the law of which, that award was made"). But it does not purport to regulate the procedures or set out the grounds for vacatur in the primary jurisdiction. *See* Restatement of International Arbitration, at § 4.9 reporters' note (a)(iv) ("[I]t is well established that the New York [Convention] . . . do[es] not regulate the grounds for vacating Convention awards under national arbitration law."); Reimar Wolff, New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards: Commentary 7 (Hart Publishing 2012) (explaining that Article V "does not harmonize the grounds for challenging an award") (emphasis deleted).

The other Articles of the Convention—all of which refer to recognition and enforcement—confirm that Article V(1)(e) does not provide the grounds for vacatur. *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 11 (2014) ("For treaties, which are primarily compact[s] between independent nations, our duty [i]s to ascertain the intent of the parties by looking to the document's text and

14                        Opinion of the Court                 20-13039

context.") (internal quotation marks and citation omitted).  Article I establishes the limited scope of the Convention in relation to arbitral awards, stating that the "Convention shall apply to *the recognition and enforcement* of arbitral awards."  Article III introduces the provisions related to recognition and enforcement, mandating that signatory countries "*recognize arbitral awards as binding and enforce them* . . . under the conditions laid down in the following articles."  Article IV lists the conditions that must be fulfilled by a party "[t]o obtain *the recognition and enforcement*" of an award.  Article V then enumerates the only grounds on which "[*r*]*ecognition and enforcement* of the award may be refused."  And Article VI allows a court exercising secondary jurisdiction to "adjourn the decision on the *enforcement* of the award" in the face of a pending vacatur application in the primary jurisdiction.[6]

Chapter 2 of the FAA implements the Convention.  The two texts should therefore be read harmoniously.  *See* Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 252 (2012); William N. Erskine, Jr., Interpreting Law: A Primer on How to Read Statutes and the Constitution 121 (2016).  Like Article V of the Convention, Chapter 2 of the FAA focuses only on recognition and enforcement.  As noted, § 207 of the FAA directs courts to confirm an arbitral award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the . . . Convention."  And Article V enumerates the grounds on

---

[6] All the emphases in this paragraph are ours.

which a court exercising secondary jurisdiction can refuse to recognize and enforce an award. Not surprisingly, our more recent cases have recognized that § 207 and Article V address enforcement and recognition. *See, e.g.*, *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1263 (11th Cir. 2011) ("Article V of the Convention . . . enumerates seven defenses that—like 9 U.S.C. § 207—are directed at courts considering whether to recognize and enforce an arbitral award. Article V applies at the award-enforcement stage.").

In sum, neither Article V of the Convention nor § 207 of the FAA provides the grounds on which a court in the primary jurisdiction can vacate an arbitral award. In coming to a different conclusion, *Industrial Risk* "d[id] not track the [text or] logic of the . . . Convention." Charles H. Brower II, *Hollow Spaces*, 61 Buff. L. Rev. 731, 821 (2013).

## 2

Chapter 2 of the FAA provides that "Chapter 1 applies to actions and proceedings brought under [Chapter 2] to the extent that [Chapter 1] is not inconsistent with [Chapter 2] or the Convention as ratified by the United States." 9 U.S.C. § 208. In discussing § 208—Chapter 2's so-called residual clause—the Supreme Court has explained that "the [New York] Convention was drafted against the backdrop of domestic law," and concluded that "the Convention requires courts to rely on domestic law to fill gaps; it does not set out a comprehensive regime that displaces domestic law." *Outokumpu*, 140 S. Ct. at 1645.

Based on the Supreme Court's discussion in *Outokumpu* and the New York Convention's binary framework, we hold that the primary jurisdiction's domestic law acts as a gap-filler and provides the vacatur grounds for an arbitral award. Stated differently, in a case like this one, § 208 of the FAA contemplates that the grounds for vacatur are the ones set out in Chapter 1 of the FAA. And because Article V of the Convention is "simply silent" on the grounds for vacatur, there is no conflict if Chapter 1 is applied. *See Outokumpu*, 140 S. Ct. at 145. *Cf. BG Group,* 572 U.S. at 29 (addressing, in a case where the international arbitral proceeding was seated in the United States, whether the arbitrators exceeded their powers under § 10(a)(4) of the FAA).

This is how the Second, Third, Fifth, and Seventh Circuits have interpreted the Convention. Their decisions, which align with the language of Article V of the Convention and Chapter 2 of the FAA, are persuasive. *See Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 22 (2d Cir. 1997) ("There is no indication in the Convention of any intention to deprive the rendering state of its supervisory authority over an arbitral award, including its authority to set aside that award under domestic law."); *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 292 (3d Cir. 2010) (agreeing with *Yusuf*, 126 F.3d at 23, that "'[t]he Convention specifically contemplates that the [country] in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law'" and explaining that "[w]hen both

the arbitration and the enforcement of the award falling under the Convention occur in the United States, there is no conflict between the Convention and the domestic FAA"); *Karaha Bodas*, 335 F.3d at 368 ("By its silence on the matter, the Convention does not restrict the grounds on which primary-jurisdiction courts may annul an award, thereby leaving to a primary jurisdiction's local law the decision whether to set aside an award."); *Lander Co. v. MMP Invs., Inc.*, 107 F.3d 476, 478 (7th Cir. 1997) ("[T]he New York Convention contains no provision for seeking to vacate an award, although it contemplates the possibility of the award's being set aside in a proceeding under local law . . . and recognizes defenses to the enforcement of an award.").

The Restatement of International Arbitration reads the Convention in the same manner: "[T]he exclusive vacatur grounds [where the arbitration is seated in the United States] are those set out in FAA § 10.  This interpretation is supported by the text of the New York Convention—which does not purport to regulate the grounds for vacating awards at the arbitral seat—and of the FAA, as well as by the majority of the U.S. courts of appeal to have addressed the issue."  Restatement of International Arbitration, at § 4.9 cmt. a.  *See also id.* at § 4.14 cmt. a ("The scope and proper exercise of set-aside authority are determined by the arbitration law of the country in which or under the law of which the award was made.").  And so do most international arbitration scholars. *See* James H. Carter & John Fellas, International Commercial Arbitration in New York §§ 1.88, 1.91 (2d ed. 2016) ("Nondomestic

arbitral awards issued by a tribunal seated in the United States or made pursuant to U.S. arbitration law may be vacated under U.S. arbitration law. . . . This means that U.S. courts may vacate awards made in the United States relying on the grounds listed in [§] 10 of the FAA[.]"); Blackaby, International Arbitration, at 635 ("[T]he New York Convention does not in any way restrict the grounds on which an award may be set aside . . . by the court of [primary jurisdiction]. This is a matter that is left to the domestic law of the country concerned."); Albert Jan van den Berg, The New York Arbitration Convention of 1958: Towards a Uniform Judicial Interpretation 95 (1981) ("[T]he grounds on which the award has been set aside in the country of origin can be any ground set out in the arbitration law of that country."); Wolff, New York Convention, at 367 ("The NYC sets neither any standards nor any limits for the courts of the State where the award was rendered for their decision-making process as to setting aside or suspending the award. An application to set aside the award in the country of origin is governed by the domestic law of the seat State.") (emphasis deleted); Lea H. Kuck & Amanda R. Kalantirsky, *Vacating an International Arbitration Award Rendered in the United States: Does the New York Convention, the Federal Arbitration Act or State Law Apply?*, 3 Arb. L. Rev. 4, 7 (2011) ("The Convention contains no description of or limitation on the capacity of the jurisdiction where the award was rendered to apply its own law vacating the award. This means that the parties' choice of the seat of arbitration can have significant consequences for any judicial review of the award.").

We recognize that one leading international arbitration treatise defends *Industrial Risk* (and, by definition, *Inversiones*). *See* Gary B. Born, International Commercial Arbitration 3211 (3d ed. 2021) (asserting that the reference to the Convention in § 207 of the FAA "does not include the more expansive bases for vacatur under § 10 of the domestic FAA and, on the contrary, was included in § 207 precisely to avoid consideration of § 10's domestic vacatur grounds in recognition actions"). But that treatise glosses over the critical fact that the Convention does not set out any grounds for vacatur, ignores the differences between recognition/enforcement and vacatur, and fails to account for the varied roles of courts in primary and secondary jurisdictions in post-award judicial proceedings. It also does not satisfactorily address § 208's command that Chapter 1 of the FAA—including its § 10 vacatur grounds—applies in New York Convention cases as long as there is no conflict.

## C

Hidroeléctrica contends that applying domestic grounds to the vacatur of international arbitral awards would run counter to the New York Convention's objective of standardizing the treatment of such awards. *See, e.g.,* Richard W. Hulbert, *The Case for Coherent Application of Chapter 2 of the Federal Arbitration Act*, 22 Am. Rev. of Int'l Arb. 45, 72 (2011) ("An intention that inconsistent standards are to be applied to the validity of an award falling under the Convention, by the same court in the same case between the same parties, depending on whether the issue is to confirm the award (at the suit of the winner) or to vacate it (at the suit of the

loser), cannot easily (or even plausibly be imputed to Congress.")). We are not persuaded.

The argument may have some appeal on policy grounds, but it starts from a faulty premise—it wrongly presumes that the Convention seeks to prescribe comprehensive standards which displace domestic law across the board. *See Outokumpu*, 140 S. Ct. at 1645. "While it would have provided greater reliability to the enforcement of awards under the Convention had the available grounds [for vacatur] been defined in some way, such action would have constituted meddling with national procedure for handling domestic awards, a subject beyond the competence of the Conference." Leonard V. Quigley, *Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, 70 Yale L.J. 1049, 1069–70 (1961). The Convention, which does not provide the grounds for vacatur, cannot attempt to make uniform that which it does not address.

### D

Hidroeléctrica also argues that, even if *Industrial Risk* and *Inversiones* were wrongly decided, principles of *stare decisis* counsel against overruling them because of the settled expectations they have created. Hidroeléctrica is correct that "[o]verruling precedent is never a small matter," *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455 (2015), but here we conclude that it is appropriate.

Though *stare decisis* is a hallmark of our judicial system, it "is not an inexorable command[.]" *McKinney v. Pate*, 20 F.3d 1550,

1565 n.21 (11th Cir. 1994) (en banc) (citation omitted). We may overrule a prior case that is "plainly and palpably wrong" if doing so would not "result in more harm than continuing to follow the erroneous decision." *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1096 (11th Cir. 2017) (en banc) (citation omitted).

In deciding whether to overrule precedent, we consider "the quality of the decision's reasoning; its consistency with related decisions; legal developments since the decision; and reliance on the decision." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1405 (2020) (citation omitted). Here these factors weigh in favor of overruling those aspects of *Industrial Risk* and *Inversiones* which hold that Article V of the New York Convention provides the vacatur grounds for an arbitral award.

For starters, *Industrial Risk* and *Inversiones* are wrong, and clearly so. They fail to analyze the text of the New York Convention or of Chapter 2 of the FAA. And they improperly conflate recognition and enforcement with vacatur by ignoring the different roles given to primary and secondary jurisdictions in post-award judicial proceedings under the Convention.

In addition, *Industrial Risk* and *Inversiones* are outliers. They are in significant tension with the Supreme Court's understanding of the Convention in *Outokumpu*, 140 S. Ct. at 1645, and they directly conflict with the decisions of our sister circuits.

In evaluating whether a prior decision "causes 'more harm than good' we . . . evaluate a range of consequences." *SmileDirectClub, LLC v. Battle*, 4 F.4th 1274, 1285 (11th Cir. 2021) (en banc) (W. Pryor, C.J., concurring) (citation omitted). In this respect, some commentators have noted that if left undisturbed *Industrial Risk* and *Inversiones* may affect how we interpret and apply the Inter-American Convention on International Commercial Arbitration (popularly known as the Panama Convention), Jan. 30, 1975, S. Treaty Doc. No. 97–12, 1438 U.N.T.S. 245, which Congress implemented through Chapter 3 of the FAA, 9 U.S.C. §§ 301 *et seq.* *See* Juan C. Garcia & Ivan Bracho Gonzalez, *Interpretation of Article V of the New York Convention in the Eleventh Circuit:* Industrial Risk Insurers, 74 U. Miami L. Rev. 1080, 1108 (2020).

Although we do not address the Panama Convention today, we note that its enforcement and recognition provisions are "substantively identical" to those in the New York Convention. *See* *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 62 n.2 (2d Cir. 2022); *TermoRio*, 487 F.3d at 933. Relying on the panel decision in this case, one of our recent decisions states that the "Panama Convention lists seven defenses which provide the exclusive grounds for vacatur." *Técnicas Reunidas de Talara S.A.C. v. SSK Ingenería y Construcción S.A.C.*, 40 F.4th 1339, 1344 (11th Cir. 2022) (citing *Corporación AIC*, 34 F.4th at 1298). This statement in *Técnicas Reunidas* equating recognition and enforcement with vacatur was arguably dicta because the case was decided solely on waiver grounds, *see* 40 F.4th at 1345-46, but

it nevertheless shows that *Industrial Risk* and *Inversiones* may not be limited to the New York Convention and may spill over to the Panama Convention.

We acknowledge that *Industrial Risk* and *Inversiones* may have created certain reliance interests. But those interests, we think, are relatively minor. First, there are two sets of parties who might be detrimentally affected by our decision today: (a) those whose arbitral proceedings under the New York Convention (i) are seated somewhere within the Eleventh Circuit and (ii) are currently ongoing; and (b) those whose agreements stipulate to an arbitral location within the Eleventh Circuit but have not yet initiated arbitration proceedings. Whether those parties number in the single, double, or triple digits is anyone's guess. Second, we do not know which, if any, of these parties chose to conduct their arbitral proceedings in the Eleventh Circuit because of *Industrial Risk* and *Inversiones*. *Cf. Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1499 (2019) ("[C]ase-specific costs are not among the reliance interests that would persuade us to adhere to an incorrect resolution of an important constitutional question.").

## IV

We hold that in a New York Convention case where the arbitration is seated in the United States, or where United States law governs the conduct of the arbitration, Chapter 1 of the FAA provides the grounds for vacatur of an arbitral award. To the extent that *Industrial Risk* and *Inversiones* are inconsistent with this holding, we overrule them.

The district court correctly followed *Industrial Risk* and *Inversiones*, which constituted binding precedent at the time, and declined to address Corporación AIC's argument that the arbitral award should be vacated because the panel exceeded its powers under 9 U.S.C. § 10(a)(4).  We vacate the judgment in favor of Hidroeléctrica and remand for the district court to consider Corporación AIC's § 10(a)(4) contention.[7]

**VACATED and REMANDED.**

---

[7] We decline Hidroeléctrica's invitation to decide the § 10(a)(4) issue ourselves.